THE STATE *ex rel.* GLENN, *Collector, Appellant,* v. THE MISSISSIPPI RIVER BRIDGE COMPANY *et al.*

#### DIVISION ONE.

1. **Taxes:** BRIDGES BETWEEN STATES. Under the revenue law (R. S. 1889, sec. 7755) that portion of a railroad bridge across the Mississippi river at Louisiana, Missouri, lying west of the Missouri state line, is taxable as a bridge while owned by a bridge company.

2. ——: ——: LEASE TO RAILROADS. The fact that the bridge is under lease to a railway company "forever" at a fixed rent, subject to a defeasance in case of failure by the lessee to comply with its terms, does not destroy the ownership by the bridge company within the meaning of the revenue law.

3. ——: RAILROAD BRIDGE. A railroad bridge may lawfully be segregated for the purposes of taxation from the railroad line in connection with which it is used, where its ownership is separate from the railway.

*Appeal from Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

THE action is to enforce the collection of taxes; judgment for defendant. Plaintiff appealed.

The material facts are given in the opinion of the court

*J. W. Matson* for appellant.

(1) The property in controversy was assessed under article 9, chapter 138, Revised Statutes, 1889, of Missouri. (2) The words "joint-stock companies" in section 7755 of said article 9 are synonymous with "joint-stock corporation." R. S. 1889, art. 1, sec. 2480, ch. 42. (3) The property assessed was "owned

by a joint-stock company," to-wit: Mississippi River Bridge Company, and, therefore, properly assessed under article 9. "It matters not whether a bridge owned by a joint-stock company is a toll bridge or not, it is taxable as a bridge." *State ex rel. v. Railroad*, 89 Mo. 103. (4) The contract (lease) between the Mississippi River Bridge Company and Chicago & Alton Railroad Company is *ultra vires*. The bridge company could not dispose of its franchise and property in the manner attempted to one company, but held it for the general public under the conditions prescribed by act of congress filed as exhibit in answer and the charter of the said Mississippi River Bridge Company also filed as exhibit. (5) Toll was charged for the use of said bridge—"twenty-five cents for each paying passenger carried either way by the Chicago, Burlington & Quincy Railroad Company," and it is therefore taxable as a toll bridge. *State ex rel. v. Railroad*, 89 Mo. 98; s. c., 97 Mo. 348. (6) In several other states the question of the right, and the manner, of assessing bridges constructed and located similar to this, to-wit, across streams leading from one state to another state, has been adjudicated. *Bridge Co. v. Adams Co.*, 88 Ill. 615; *State v. Metz*, 32 N. J. L. 199; *Bridge Co. v. County*, 9 Pa. St. 415; *Penn v. Bridge Co.*, 9 Am. Law Reg. 298; 33 Cent. Law Jour., December 4, 1891, No. 23, pp. 430, 431.

*J. G. Trimble* for respondents.

(1) Appellant's first point in assignment of errors is not well taken. The motion filed by the Chicago & Alton Railroad Company shows it to be the "real party in interest," and, hence, a proper party to the suit. R. S. 1889, sec. 1990. This question, however, is not before the court, for the reason that plaintiff did not

except to the ruling of the court at the time. "It is not sufficient to make the objection for the first time in the motion for new trial." *State v. Reed*, 89 Mo. 168, and authorities cited. Denying "the right of the Chicago & Alton Railroad Company to be made code-fendants" is not taking exception to the ruling of the court in sustaining the motion. (2) Appellant's second point cannot be considered in this court, for the reason that the error complained of was not called to the attention of the trial court in the motion for new trial. "The action of the trial court in admitting or rejecting evidence will not be reviewed by the supreme court, unless called to the attention of the trial court in the motion for new trial." *Vineyard v. Matney*, 68 Mo. 105; *Hulett v. Nugent*, 71 Mo. 131; *State ex rel. v. Richardson*, 77 Mo. 589; *Snell v. Harrison*, 83 Mo. 652. (3) The bridge in question is neither owned by joint stock companies, nor is it a toll bridge and should be taxed merely as so much roadbed under article 8, chapter 138, Revised Statutes, 1889.

BARCLAY, J.—This action was begun by the collector of the revenue for Pike county to enforce payment of certain taxes, assessed and levied for state, and also for local, purposes against the property of the Mississippi River Bridge Company, situate in that county.

The assessment by the state board of equalization and the levy by the county court of Pike county are not challenged for any irregularity. The objection to them goes deeper, and is placed upon the contention that the property in view is not subject to the tax imposed. That property is the Missouri portion of a railroad bridge across the Mississippi river at Louisiana, Missouri.

To make the present issue entirely clear a short history of that structure will be given:

For many years the Chicago & Alton Railroad Company operated a line of railroad in Illinois to a point opposite the city of Louisiana, and it ran a line in Missouri, leased from the Louisiana & Missouri Railroad Company, westward from that city. The transfer of trains over the river was then made by ferry.

In 1871 the Louisiana & Missouri Railroad Company was authorized, by an act of congress, to construct a railroad bridge over the river on certain conditions, some of which will be discussed later on.

Afterwards, a corporation was organized in Illinois, called the Mississippi River Bridge Company, to erect a bridge at the place indicated, and to exercise the power of eminent domain in reference thereto in that state, while a similar corporation, the Louisiana Bridge Company, was formed in Missouri for the exercise of like powers on this side of the river.

In 1873, under legislative authority from both states, the two bridge companies were consolidated under the name of that first mentioned, the present defendant. The Louisiana & Missouri Railroad Company then entered into an agreement with the bridge company by which the latter was to build the bridge (under the grant of power by congress to the former), and the bridge company was thereupon to become the owner of the completed work in consideration of its outlays upon it. This contract was carried out.

None of the moves so far described of these companies is called in question by any party to the litigation. This appeal proceeds on the assumption that they are entirely valid, and we shall so treat them.

After the bridge was finished, the bridge company leased it to the Chicago & Alton Railroad Company for

VOL. 109, OCTOBER TERM, 1891.    257

The State ex rel. Glenn v. The Mississippi River Bridge Co.

use in connection with its lines in Illinois and Missouri. The terms of this lease will necessarily be referred to again, since upon them arises one of the most important questions in the case.

The trial court held that the bridge property was improperly assessed as such by the state board of equalization, and that it should have been treated, for taxation, as a portion of the line of the Chicago & Alton Railroad Company in Missouri. It rendered judgment accordingly, and the plaintiff appealed in the interest of the county.

By section 7755 (R. S. 1889) of the revenue law it is provided that "all bridges  *  *  *  over streams dividing this state from other states, owned by joint-stock companies, and all such bridges where a toll is charged for crossing the same  *  *  *  shall be subject to taxation for state, county, municipal and other local purposes to the same extent as the property of private persons, and taxes levied thereon shall be levied and collected in the manner as is now, or may hereafter be provided by law for the taxation of railroad property in this state."

Under other sections of the revenue law, bridges forming merely parts of a railway line, and not comprehended within the terms of the section above quoted, are taxed as general railroad property. R. S. 1889, secs. 7717, 7718, etc.

But it is evident that such a structure as that here in consideration is included within the scope of the language, no less than of the spirit and intent, of section 7755.

By the federal authority under which it was erected, this condition is affixed to the ownership and use of the bridge, viz.: "That all railway companies, desiring to use the said bridge, shall have and be entitled to equal

rights and privileges in the passage of the same, and in the use of the machinery and fixtures thereof, and of all approaches thereto, under and upon such terms and conditions as shall be prescribed by the district court of the United States for the district in which said bridge is situated upon hearing the allegations and proofs of the parties, in case they shall not agree." 16 U. S. Statutes at Large, 1871, sec. 5, p. 474. Under that stipulation the Chicago, Burlington & Quincy Railroad Company enjoys a concurrent use of the tracks and other bridge privileges for a consideration of $150, monthly, and twenty-five cents additional for each paying passenger, carried over the river on its line at that point.

This arrangement was made between that company and the Chicago & Alton Railroad Company, as lessee of the bridge, and it is yet in force. Any railway company, desiring like accommodations, may secure them upon reasonable terms, in the mode indicated in the section just quoted from the act of congress.

The Chicago & Alton Railroad Company is in possession of the bridge by virtue of the lease already mentioned. It is contended that the nature of its tenure is such as renders that property, in substance, one with the entire road of that company in Missouri for purposes of taxation.

The general features of the lease in question are these:

The bridge company leases the property to the railway company "forever," upon conditions stated. The railway company is to use and operate the leased premises as part of its line; to keep them in good repair; to pay all taxes thereon; to pay the salaries of the officers of the bridge company, the interest and principal of its bonded indebtedness, and an annual (seven per cent.) dividend upon its stock. The bridge company is to incur no new indebtedness, nor increase

its capital stock.   In case of default on the part of the railway company, in performance of the agreements mentioned, the lessor may re-enter and dispossess the lessee of the property.

It is clear from this statement of the substance of the instrument that, notwithstanding the long term the tenancy may normally endure, the paramount title remains in the bridge company.   The lease is subject to a defeasance in event of any failure, on the part of the lessee, to meet all its requirements, and its entire scope and effect exclude the notion of any attempt at a transfer of the title outright.   This view of it results in the ruling that the property is yet "owned" by the bridge company within the meaning of the section for the taxing of bridges; for it cannot require a moment's consideration to determine that such corporations were intended to be embraced within the term "joint-stock companies."

Its retention of ownership imposes the burdens incident thereto under the plain words of the law. Indeed, there is much therein to indicate that such bridges as this were directly in contemplation in its enactment.

The decision in *State ex rel. v. Railroad*, 97 Mo. 348, has been pressed upon our notice as pointing to a conclusion different from that we have reached on this point.   There is this difference between the facts in judgment there and here.   In this case we find the bridge company the owner of the property, subject to the lease described, whereas in that, no such fact existed.   This distinction is important under the language of the statute (section 7755).   It was noted in the first opinion in that case (which the latter one in the ninety-seventh report does not purport to overrule), when it was said that "it matters not whether a bridge owned by a joint-stock company is a toll bridge or not,

it is taxable as a bridge.'' *State ex rel. v. Railroad*, 89 Mo. 103. Nothing that was written in either opinion in that cause was intended, nor, we think, can fairly be construed as inconsistent with the judgment we announce in the case at bar.

That such a structure as this may, for the purpose of taxation, be lawfully segregated (by reason of its separate ownership) from the railway line in connection with which it is used, is a proposition too clear to require discussion. Compare *Railroad v. Williams* (1890), 53 Ark. 58; *Cass Co. v. Railroad* (1889), 25 Neb. 348; *Bridge Co. v. Adams Co.* (1878), 88 Ill. 615; *Railroad v. Devereux* (1889), 41 Fed. Rep. 14; *State v. Metz* (1880), 29 N. J. L. 122.

Our statute evidently intends such severance of bridges, held as is this one, for reasons of public concern which it is not our province to question. Our duty is merely to give effect to such intention, lawfully expressed.

We conclude that that portion of this bridge indicated by section 7757 is subject to be taxed as the property of the Mississippi River Bridge Company under section 7755 of the revenue law of 1889 (the same as section 6901 of 1879).

It follows that the judgment should be reversed and the cause remanded. It is so ordered with the concurrence of all the judges of the division.