THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

THE PEOPLE *ex rel.* Jacob Windmiller.

*Filed at Springfield November 26, 1894.*

1. LEASE—*of railroad bridge upon condition does not pass title.* The lease of a railroad bridge and its appurtenant real estate by the constructing company to a railroad company and "its successors and assigns, forever," upon conditions which may terminate the lease at any time upon default, is not a lease in perpetuity, and leaves the ownership of the property in the lessor.

2. TAXATION—*to whom and by whom railroad bridge assessable.* While property so in possession of a railroad company and used for railroad purposes might, by election of the public authorities, be assessed by the State Board of Equalization as "railroad track," yet the company, not owning title to it, cannot insist upon its being so assessed, and an assessment by the local assessor will stand.

3. SAME—*what is "railroad track."* In order that a railroad company may be in a position to insist that property shall be assessed by the State Board of Equalization as "railroad track," such property must not only be used for railroad purposes, but must also be the property of the company.

Appeal from the County Court of Pike county; the Hon. Edward Doocy, Judge, presiding.

Messrs. Matthews, Higby & Grigsby, for the appellant :

The exclusive power to assess "railroad track" is conferred upon the State Board of Equalization, and an assessment upon the same property by the local assessor will be a double assessment, and the tax extended upon the latter assessment will be illegal and void. *Railroad Co.* v. *People*, 98 Ill. 350 ; *Railroad Co.* v. *Webber*, 99 id. 464; *Railroad Co.* v. *Goar*, 118 id. 134; *Railroad Co.* v. *People*, 129 id. 571.

By "right of way" can only be understood the land used as a way for the road. *Railroad Co.* v. *Paddock*, 75 Ill. 616 ; *Railroad Co.* v. *People*, 98 id. 350..

Where the charter of a railroad company authorizes it to acquire, by lease, purchase or otherwise, other roads, etc., and provides that property so acquired shall become the property of the corporation lessee, the courts will give effect to such provision, and property thus leased will become, for purposes of taxation, at least, the property of the lessee. And in distributing the value of the capital stock for taxation among the different counties, in proportion to the length of the main line in each county, such leased roads will be considered parts of main line. 2 Rorer on Railroads, 1507, and cases cited; *Huck* v. *Railroad Co.* 86 Ill. 352.

The act of 1873, providing that "all bridge structures across any navigable stream forming the boundary line between the State of Illinois and any other State, shall be assessed by the township or other assessor in the county where the same is located, as real estate," was not intended to change the method of taxing railroad property or the mode of assessing it, but to apply to bridges not constituting a railroad track exclusively, and

to make such structures real estate for the purpose of collecting taxes thereon. *Anderson* v. *Railroad Co.* 117 Ill. 26.

A lease in perpetuity is equivalent to an absolute conveyance. *Railroad Co.* v. *Boyd*, 118 Ill. 73.

A lease cannot subsist without a reversion. Where all the grantor's estate is transferred the instrument will operate as an assignment, notwithstanding the reservation of a rent to the grantor, or a right of re-entry on non-payment, or on the non-performance by the grantee of covenants contained in it, and although words of demise be used instead of words of assignment. 1 Platt on Leases, 19.

Mr. WILLIAM BROWN, and Mr. M. J. SCRAFFORD, also for the appellant:

The law of this State is, that "every person, company or corporation owning, operating or constructing a railroad in this State shall return sworn lists or schedules of the taxable property of such railroad." Starr & Curtis' Stat. sec. 40, chap. 120.

That the land assessed is railroad land cannot be denied, and the only land of a railroad company which a township assessor, under the law, is authorized to assess, is "real estate other than railroad track pertaining to the railroad." Sec. 47, chap. 120, p. 2044.

If the property is "railroad track," the power to assess it is lodged solely in the State Board of Equalization. Sec. 50, chap. 120.

For purposes of taxation, appellant will be considered the owner, the same as any other of its branch lines. *Huck* v. *Railroad Co.* 86 Ill. 355.

Messrs. WILLIAMS & WILLIAMS, and Mr. AVERILL BEAVERS, State's Attorney, for the appellee:

No lease, for however long a period, accompanied with conditions of defeasance or forfeiture, can, in any sense of the term, be equivalent to an absolute deed of conveyance. *State* v. *Bridge Co.* 109 Mo. 253; *St. Louis, etc.*

*Co.* v. *Williams*, 53 Ark. 58 ; *Cass County* v. *Railroad Co.* 25 Neb. 348 ; *Bridge Co.* v. *Adams County*, 88 Ill. 615 ; *State* v. *Metz*, 29 N. J. L. 122.

Although the description of the land may be defective, appellant, by entering its appearance and urging general objections, waived the right to object to the sufficiency of the notice of application for judgment. *People* v. *Dragstran*, 100 Ill. 286 ; *People* v. *Sherman*, 83 id. 165.

If the Mississippi Bridge Company has an interest in the bridge, as lessee, owner or otherwise, then it is not exclusively owned by appellant, and should be assessed as real estate. *Anderson* v. *Railroad Co.* 117 Ill. 26.

Mr. Chief Justice Wilkin delivered the opinion of the court :

The county collector of Pike county applied to the court below, at its May term, 1892, for a judgment against certain property for delinquent taxes assessed against it by the assessor of one of the townships of that county, for the year 1891. The assessment was against a fractional piece of land containing 21 and 38-100 acres, as belonging to the Mississippi Bridge Company. The Chicago and Alton Railroad Company appeared and filed objections to the application, setting up that the property was part of its railroad, denominated by law "railroad track," and, as such, subject to assessment by the State Board of Equalization, and not by any local assessor ; that the same had been regularly returned to and duly assessed by said board for the year 1891, and the assessment fully paid. The county court, upon hearing the evidence offered in support of and against the objections, overruled the same, and gave judgment accordingly for the amount of the tax assessed, $2289. From that judgment this appeal is prosecuted.

That the property in question is subject to taxation is not denied, nor is it claimed that it was unfairly assessed by the local assessor. His assessment is challenged on

the sole ground that he had no authority of law for making it.    Appellant maintains that the property was railroad property, assessable only by the State Board of Equalization.    Appellee insists it is liable to taxation under the act approved and in force May 1, 1873, entitled "An act to provide for the assessment and taxation of bridges across navigable streams on the borders of this State," wherein it is provided that such bridges shall be assessed by the township assessors, in the townships where the same are located, as real estate.    Starr & Curtis' Stat. sec. 1, chap. 120, p. 2124.

The controlling question in the case raised by the objections filed below is, was the objector entitled to have the property assessed to it as railroad property.    If it was, it may be conceded, for the purposes of this decision, that the State Board of Equalization alone had power to assess it.    Whether objector had the right to demand that the assessment should be against it as for railroad property, in our view of the case depends upon the ownership of the property.    If the railroad company was the owner, the property could not be lawfully assessed under section 1, chapter 120, *supra*, but only by the State Board of Equalization as "railroad track." (*Anderson* v. *Chicago, Burlington and Quincy Railroad Co.* 117 Ill. 26.)    If, on the other hand, the property was owned by the Mississippi Bridge Company, to whom it was assessed by the township assessor, we think it equally clear the railroad company could have nothing to say as to how or by whom it should be assessed,—in other words, if it was owned by the bridge company it could not be assessed as railroad property.

The fact that the structure was a railroad bridge, and used exclusively as such, would not entitle its owner to have it assessed as railroad property, unless that owner was a railroad company.    Railroad property, to be assessable by the State Board of Equalization as "railroad track," must not only be so used, but it must be the prop-

erty of a railroad company. The question is not whether the property *could* have been assessed to appellant by the local assessor. The public authorities might have elected to so assess it, the railroad company being in possession and control of it, and if they had done so, the company would, we think, have had the right to insist upon the assessment being made by the State board. But the question here is, had appellant a right to say the property could only be lawfully assessed against it? If an individual or corporation should construct a railroad bridge over a stream on the borders of this State, and allow a railroad company to use it in connection with other parts of its track, whether under a lease, by charging tolls, or otherwise, the bridge would certainly not thereby become railroad property, in the sense that the owner could insist upon its being assessed as such. If it would, the act of May 1, 1873, providing for the taxation of bridges, cannot, in any case, be applied to railroad bridges. Nor would the fact that the railroad company using the bridge had agreed with the owner to pay all taxes assessed against it, give such railroad company the right, as against the public, to say it should be assessed in a particular way. We regard the foregoing propositions as so self-evident that argument is unnecessary in their support. They are sustained by *St. Louis and Santa Fe Railway Co.* v. *Williams*, 53 Ark. 58.

The facts as to the ownership and acquisition of this property are briefly these: In August, 1870, the Chicago and Alton Railroad Company leased from the Louisiana and Missouri River Railroad Company a line of railroad leading west from the Mississippi river at Louisiana, Mo., "together with the steam ferry-boats necessary to conduct the business of said railroad across the Mississippi river," for a term of one thousand years, at a rental of a per cent given, of the gross earnings. The lease provided that if the ferry should be discontinued the railroad company should not be required to account for proceeds

which might be earned by its operation and management, and if a bridge should be substituted therefor, the earnings of it should not be taken as a part of the gross earnings of the railroad in determining the rental under the lease.    The following November it also leased, "forever," from the St. Louis, Jacksonville and Chicago Railroad Company, a road extending east from the river opposite Louisiana, thus giving it a line east and west, connected by ferry across the Mississippi river. In March, 1871, the Louisiana and Missouri River Railroad Company was authorized, by an act of Congress, to build a bridge over the river, for the use of its railroad.    The Mississippi Bridge Company is a corporation organized under the laws of this State and Missouri, with authority to construct and maintain a bridge at the same point. On July 5, 1873, this bridge company entered into a contract with the Louisiana and Missouri River Railroad Company, agreeing, at its own expense, to acquire the land necessary for approaches, and to construct the railroad bridge in question, and in carrying out that contract the bridge company purchased the 21 and 38-100 acres of land for right of way and for earth with which to construct the easterly approach thereto.    Some time after its completion, the bridge company, as party of the first part, leased the bridge to the appellant railroad company, as party of the second part, and to its successors and assigns, forever, upon the terms and conditions therein set forth.    The property is described in the lease as "all and singular the bridge of the party of the first part, from the city of Louisiana, in the county of Pike, in the State of Missouri, across the Mississippi river to the county of Pike, in the State of Illinois, and its appurtenances, appendages and protections, and all franchises and property of the party of the first part, however or whenever acquired, or which may be hereafter acquired."    The railroad company agreed, among other things, to use the bridge as a part of its railroad line, and keep it in repair,

pay all taxes thereon, pay the salaries of the officers of the bridge company, its bonded indebtedness, and an annual dividend of seven per cent upon its stock. The lease also provides, that if the party of the second part, or its successors or assigns, shall fail to keep and perform the covenants, conditions and agreements therein contained, the party of the first part may re-enter, etc.

It is insisted on behalf of appellant that this is a lease in perpetuity, and therefore has the force and effect of an absolute conveyance. If that position could be maintained the case would be within the decision in *Anderson* v. *Chicago, Burlington and Quincy Railroad Co. supra,* and free from difficulty. The lease is not, however, in absolute perpetuity, but may be terminated at any time upon default of the lessee to keep and perform its terms and conditions, and in different ways recognizes the paramount ownership of the property as remaining in the lessor. The terms and conditions of this conveyance are all inconsistent with an intention to pass the absolute title to the lessee. It is, to all intents and purposes, but a lease, though for a term which may continue for all time, the absolute ownership remaining in the lessor.

*Chicago, Burlington and Quincy Railroad Co.* v. *Boyd et al.* 118 Ill. 73, cited by counsel, is not in point. There the Fox River Railroad Company, as is stated in the opinion, "granted and demised to complainant, in perpetuity, all its property, real and personal, and all the privileges and franchises it had under its charter from the State," and we said "that was equivalent to an absolute conveyance." That conveyance was unconditional. It is certainly not to be supposed that the parties to the instrument now before us made it with the purpose of conveying the absolute ownership of the property, when, by a much simpler form of deed, they could have clearly expressed such a purpose. (*State ex rel. Glenn* v. *Mississippi Bridge Co. et al.* 109 Mo. 253.) In that case the question was whether the Missouri portion of this same bridge was liable to

taxation, and the court, after stating the facts bearing upon the construction of the bridge, and fully considering the same lease now under consideration, said: "It is clear from this statement of the substance of the instrument, that, notwithstanding the long term the tenancy may endure, the paramount title remains in the bridge company." If the decision in that case is followed by us an affirmance of the judgment below must result, and we see no good reason for dissenting from the views there expressed.

It is said, however, the ownership of the property was determined there upon the lease alone, whereas here the further contention is made by appellant that the bridge, when completed, belonged to the Louisiana and Missouri River Railroad Company, subject to whatever rights, if any, the Chicago and Alton Railroad Company had to its exclusive possession and use under the conveyance from the bridge company dated December 3, 1877, and further subject to the right of the Chicago and Alton Railroad Company to the same as after acquired railroad track of the Louisiana and Missouri River Railroad Company, under the lease from that company dated August 1, 1870. These positions both rest upon the assumption that the bridge company never owned the bridge, but that it originally belonged to the Louisiana and Missouri River Railroad Company. The assumption is, in our opinion, unwarranted by the facts. It is wholly irreconcilable with the lease from the bridge company to appellant. That instrument not only describes the bridge as belonging to the bridge company, but throughout recognizes no right of property therein in either this appellant or the Louisiana and Missouri River Railroad Company. The contract between the last named company and the bridge company for the construction of the bridge does, in one part of it, state that the railroad company employs the bridge company as its agent and servant, to construct and maintain the bridge, but it also contains the stipu-

lation that the bridge company is to advance for the railroad company the money for the building and maintenance of the same, and in consideration thereof, and the acquiring and constructing the approaches to the bridge, the bridge company should "forever" have the exclusive possession and use of said bridge, without let or hindrance of or from the said party of the first part, (the railroad company,) which exclusive possession and use are agreed to be in liquidation of all sums of money advanced by said party of the second part, and for its services to be performed under this agreement. The language, "shall forever have the exclusive possession and use of said bridge," in its connection, we think shows that the parties intended that the bridge company should become the owner of the structure when completed. Certainly appellant and that company so construed it when they made the lease of December 3, 1877.

It appears, from the evidence, that appellant furnished the money to the bridge company with which to build the bridge, and that it was in fact built for its sole benefit, so far as that could be done in view of the right of other railroad companies to use it, under the act of Congress authorizing its construction, and counsel seem to insist that therefore appellant should be held to be the owner of the property. There is certainly enough in these and other facts proved to raise an inquiry as to why appellant did not take a deed for the property from the bridge company, instead of leasing it, but we are unable to see upon what principle courts can be asked to ignore the direct and positive evidence of title as the parties have made it, and hold that appellant is the owner, by construction, merely, that it may be assessed by the State Board of Equalization instead of the local assessor. Either from necessity or of its own volition, appellant has never become the absolute owner of the property, but has left the legal title to the same in the Mississippi

Bridge Company, and it is therefore subject to taxation against the latter by the township assessor of the town in which it is located.

The judgment of the county court is therefore right, and it will be affirmed. The clerk will enter judgment in this court for the sum of $2289, and it is ordered that the amount deposited by appellant with the collector upon the taking of this appeal be credited upon the judgment so entered, (2 Starr & Curtis, sec. 192, p. 2091,) and that execution issue for any balance remaining unpaid.

*Judgment affirmed.*