[L. A. No. 2070. In Bank.—January 8, 1909.]

## GRACIOSA OIL COMPANY, Respondent, v. COUNTY OF SANTA BARBARA, Appellant.

TAXATION—LEASEHOLD INTEREST—ASSESSMENT OF ENTIRE ESTATE TO LESSOR.—As a general rule, in the absence of contrary statutory provisions, where land is held under an ordinary lease for years, giving the lessee the right to hold the land for usufructuary purposes only, there can be but one assessment of the entire estate in the land, which should include the value of both the estate for years and of the remainder or reversion. Notwithstanding the repeal in 1880 of section 3887 of the Political Code, which provided that the lessor of real estate was liable for the taxes thereon, this is the rule that still obtains in this state as to land held under such leases.

ID.—LEASE OF OIL-BEARING LANDS—RIGHT OF LESSEE TO EXTRACT OIL MAY BE SEPARATELY ASSESSED.—Under section 1 of article XIII of the constitution, and the sections of the Political Code (secs. 3617, 3820-3822), enumerating the various kinds of real estate that are subject to taxation, and providing methods for the enforcement thereof, the estate of a lessee in lands overlying oil-bearing strata, who has the right under his lease to bore for, extract, and convert to his own use oil therefrom, upon paying a royalty to the lessor, without any right to the ordinary usufruct of the soil, may be separately assessed for purposes of taxation to the lessee, and the remainder of the entire estate in the land may be separately assessed to the lessor.

ID.—RIGHT TO EXTRACT OIL IS REAL ESTATE—CLAIM TO LAND—RIGHT AND PRIVILEGE APPERTAINING TO MINERALS.—The right of the lessee to take such oil stratum from its place and convert it to his own use is a "claim to" land within the meaning of subdivision 1 of section 3617 of the Political Code, providing that a "claim to" land is real estate subject to taxation, and is also a "right and privilege appertaining to" minerals, within the meaning of subdivision 2 thereof, and taxable as such.

ID.—LANDS HELD IN PRIVATE OWNERSHIP.—Subdivision 2 of section 3617 of the Political Code, providing that for purposes of taxation real estate shall include "all mines, minerals, and quarries in and under the land, all timber belonging to individuals or corporations, growing or being on the lands of the United States, and all rights and privileges appertaining thereto," is applicable to mines, minerals, quarries, and timber, and rights and privileges appertaining thereto, in and on lands held in private ownership, as well as in and on lands owned by the United States.

APPEAL from a Judgment of the Superior Court of Santa Barbara County. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, W. S. Day, District Attorney, and R. B. Canfield, for Appellant.

H. C. Booth, for Respondent.

SHAW. J.—This is an action to recover taxes assessed against plaintiff by defendant and paid under protest, claiming that the assessment is void.

For the year 1904 plaintiff was assessed for taxes as the owner of property described on the assessment-roll as "mining rights and privileges under lease made by L. Harris et al., to Graciosa Oil Co., dated December 15, 1900, and recorded in (referring to the record) in and to the following described lands," (describing about seven thousand acres of land situated in Santa Barbara County). The property rights thus described were assessed at the value of fourteen thousand, nine hundred and fifty dollars, and on this assessment the taxes in question were levied and paid.

For the same year the same land was assessed to the lessors Harris et al., who were the owners of the fee, at the value of sixty-six thousand, four hundred and fifty dollars. In this assessment the land was described by sections and subdivisions, precisely as in the assessment to plainitff, without mention of any deduction from the valuation thereof or of any exception arising out of any qualification, limitation, or burden upon the fee, by reason of the separate ownership of the mining rights and privileges referred to in the assessment to plaintiff. It was found by the court, however, "that the mining rights and privileges assessed to plaintiff *was* not included, and no part of them was included, for assessment in or with any of the property as assessed to" Harris et al., and that "the said assessment of said mining rights and privileges was not included in and did not include the assessment of any property assessed" to said Harris et al. We understand this finding to mean that there was no double assessment or double taxation upon the same property or interest therein, and we assume therefrom that the valuation of the entire estate and property in the land, as made by the assessor, including the plaintiff's rights and privileges, would exactly equal the aggre-

gate amount of all the assessments involved. · The court below, in its conclusions of law, held the assessment to plaintiff void solely on the ground that the mining rights and privileges granted by the lease were not taxable or assessable separately from the land upon which they were operated, and that the lease did not create a separate taxable interest in the land. or justify a separate assessment of the right granted, although the value of said right was not included in the valuation of the land in the assessment to the landowners. The question presented and argued is whether or not, under the provisions of the constitution and of the Political Code providing for taxation, an assessment of the mining rights and privileges of plaintiff under the lease referred to can be made against the plaintiff, separately from and in addition to the assessment to the owners of the fee covering the land itself but not including said rights and privileges, or, in other words, whether or not the respective rights of the plaintiff and of Harris et al., under the contract, are separately assessable to each.

The contract of lease was dated December 15, 1900. The parties of the first part, named as lessors, were Lawrence Harris, Eleanor Kate Harris, and Harry H. Harris, the owners of the land. By this contract the landowners granted to the plaintiff, party of the second part, "the sole and exclusive right to enter upon the premises (described) for the purpose and to mine or bore wells, ·or to do whatever things may be necessary and proper for the development and extraction upon said premises of petroleum, and other hydrocarbon substances, by whatever name known, and natural gas (asphaltum included)," together with the privilege of conveying over said land any of said substances produced therefrom, the right to use the water of the streams thereon so far as needed in said business, and of placing and maintaining on the premises "all structures and appliances necessary and useful for the objects of the lease; . . . to have and to hold the said premises and privileges with the appurtenances for the said purposes unto the said party of the second part, its successors or assigns, from and after the date hereof . . . for and during the whole period of twenty years, unless otherwise terminated by the party of the *second* part, (plaintiff?), for failure to comply with the terms of this lease": provided, that if any wells on the premises were then producing oil, such wells might be re-

tained by the plaintiff and deepened and operated thereafter so long as they continued to produce. It further provided that the lessee should begin development work within six months from the date of the lease and prosecute the same continuously in good faith to success or abandonment, but that it should have the right at its option to abandon the lease at any time that it deemed it unprofitable to hold or operate and that the lease should thereupon become void. And further that "in the event that oil is found, the lessee agrees to deliver or pay as rent or royalty to the said lessor . . . the one-tenth part or share of so much of all the crude oil or petroleum, naphtha, or maltha, which may be produced and saved by the lessor from said wells and operations on said premises," not including that required by the plaintiff for fuel in the mining operations.

The contention of the respondent is that there can be but one assessment of these lands, that the assessment to the Harrises covers and includes all other interests and that, after having made that assessment, excluding the value of plaintiff's rights, it is not lawful to separately assess to the plaintiff the value of its property rights under the oil lease.

It is no doubt the general rule, regarding land held under an ordinary lease for years giving the right to hold the land for usufructuary purposes only, that, in the absence of contrary statutory provisions, there is to be but one assessment of the entire estate in the land, and that this assessment should include the value of both the estate for years and of the remainder or reversion. (27 Am. & Eng. Ency. of Law, p. 678; *Chicago* v. *People,* 153 Ill. 409, [38 N. E. 1075]; *State* v. *Mississippi B. Co.,* 109 Mo. 253, [19 S. W. 421].) Section 3887 of the Political Code recognized this rule and provided that "the mortgagor or lessor of real estate is liable for the taxes thereon." This section was repealed in 1880, but, so far as we are advised, the practice of making but one assessment of such land and covering therein the entire value of all interests and estates, has been uniformly followed in this state, since its repeal as well as before.

With respect to ordinary leases for usufructuary purposes there are good reasons for this practice. Except when held for speculative purposes, the value of land usually depends on the value of the use and occupation, and consists of a sum

equivalent to a principal which, at the rate of interest usual upon safe investments, will bring a net annual income equal to that which the land will produce. The lessor or landowner annually receives a sum as rent which he deems the equivalent of this annual income, or of the value of the use of the land to him, and therefore he enjoys the entire beneficial interest in the premises, including the value of the leasehold as well as of the fee. There are exceptional cases, due to the sudden rise in rental values, where this is not the case. But general rules in regard to taxation must be made to fit the usual conditions and not the exceptional ones, and statutes are to be construed with this fact in view. Since 1880 there has been no express statutory provision on the subject, but we think that, as to such leasehold estates, the owner of the fee may fairly be deemed to be the owner of the whole estate for purposes of taxation.

There are material differences between such estates for years and the right and privilege to bore for and extract oil, held by the plaintiff under its oil lease. (See Thornton on Oil, secs. 47, 48.) The plaintiff, it is true, does not own an absolute present title to the oil strata in place. Such an absolute estate in an underlying stratum may be created and the estate of the owner of the overlying land and of the owner of the subterranean stratum will be as distinct and separate as is the ownership of respective owners of two adjoining tracts of land. For purposes of separate ownership land may be divided horizontally as well as superficially and vertically (Jones on Real Property, sec. 537; *State* v. *Moors,* 12 Cal. 70.) But the contract in question vests no present title in a stratum in place. It leaves the title to the oil in the landowner until it is brought to the surface. The right vested in plaintiff is an estate for years, so far as necessary for the purpose of taking oil therefrom, and it carries with it the right to extract the oil and remove it from the premises. This right constitutes, for the term prescribed, a servitude on the land and a chattel real at common law. (Civil Code, sec. 801, subd. 5; sec. 802, subd. 6; *Harvey C. & C. Co.* v. *Dillon,* 59 W. Va. 605, [53 S. E. 928-937], and cases there cited; Thornton on Oil Leases, sec. 51.) The royalty is frequently fixed before the discovery of oil, usually at a time when the existence of oil in profitable quantities is a matter of conjecture, and with-

out regard to the adjustment between the parties of the burden of taxation upon the respective interests. The value represented by the royalty is ordinarily very small, as compared to that of the right of the lessee. After the discovery of oil in such leased ground, the value of the lessor's real interest and right is much less than it would be if he had the whole estate, including all the oil thus discovered. There is no real parallel between such a case and that of a lessor under an ordinary lease for occupation and use. It is well known that such leasehold estates or interests in oil strata, after a discovery of oil, often command large prices in the market, out of all proportion to the value of the interest of the landowner receiving only the royalty and enjoying the use only for other purposes. The right of the lessee under this contract is more than that of the ordinary lessee. It is of a different character and for a different purpose. He has no right at all to the usufruct of the soil. His right extends to the extraction of a certain part of the substance of the land itself, to its permanent separation and removal and its conversion to his own use. The whole object of the contract is to effect, if not technically a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another.

It can be easily seen that the reasons for the rule applicable to ordinary leases for the use only, that the entire estate should be assessed to the lessor, are entirely lacking here, and that it would be a more just and reasonable adjustment of the burden of taxation of such oil leases to assess each party separately with the value of his right or estate in the land. There is no statute forbidding it. On the contrary, we think the statute at least permits it, if it does not require it. If it is permitted, the respondent cannot complain. The suit is based on the provisions of section 3804 of the Political Code which give a right of recovery only when the assessment is absolutely void. Mere irregularities in procedure which do not invalidate the assessment do not absolve the taxpayer from his obligation to pay the taxes nor give him any right to recover taxes already paid.

The Political Code declares that all property must be assessed to the owner thereof. (Sec. 3628.) It must be conceded that the rights and privileges of the plaintiff under this

CLV Cal.—10

lease are private property and are taxable in some form. (Constitution, art. XIII, sec. 1.) The property rights thus vested in plaintiff belong to it and not to its lessor. It cannot with good reason be contended that the value of the lessor's estate, including the value of the right to the royalty in the oil produced, embraces, covers, or represents the value of the plaintiff's rights and privileges in the land, as in the case of the lessor in an ordinary lease. It would seem to follow, necessarily, that the mining rights and privileges of the plaintiff should be separately assessed to it as the owner.

The code recognizes such rights and privileges as a species of property in real estate and makes sufficient provision for the effective enforcement of payment of taxes thereon. Section 3617 provides as follows: "The term 'real estate' includes: 1. The possession of, claim to, ownership of, or right to the possession of land. 2. All mines, minerals, and quarries in and under the land, all timber belonging to individuals or corporations, growing or being on the lands of the United States, and all rights and privileges appertaining thereto." The strata of oil, or oil-bearing sand, constitute, as we have seen, a part of the land which may be the subject of separate ownership. There may be a separate "claim to" this part of the land, as well as a separate "claim to" a portion of the surface. A "claim to" take this stratum from its place and then convert it to one's own use may well be termed a claim to land, although not accompanied by actual physical possession of the subterranean deposit. The lease also gives plaintiff the right to possession of the surface of the ground, so far as may be necessary to enable it to bore for and extract oil and as an incident to the main purpose of the contract. The plaintiff's rights may therefore, in these aspects, be classed as real estate within the first clause of section 3617. The oil strata also constitute "minerals in and under the land," and the rights and privileges of plaintiff under the lease are clearly "rights and privileges appertaining" to such minerals, and, consequently, are real estate within the meaning of the second subdivision aforesaid. With respect to enforcing payment of the taxes, section 3820 provides that "the taxes on all assessments of possession of, claim to, or right to the possession of land, shall be immediately due and payable upon assessment, and shall be collected by the assessor as provided in this chapter."

Section 3821 declares that in the cases provided for in section 3820 the assessor shall at the time of making the assessment, or at any time before the first Monday of August following, "collect the taxes by seizure and sale of any personal property owned by the person against whom the tax is assessed, or if no personal property can be found, then the assessor may collect the taxes by seizure and sale of the right to the possession of, claim to, or right to the possession of, the land." By section 3822 the provision of sections 3791 to 3796, inclusive, are made applicable to such seizure and sale. These sections provide for a sale at public auction with immediate delivery of possession to the purchaser. The interests of plaintiff, therefore, come within the precise terms of section 3820, and if no personal property can be found belonging to the owner, the assessor could forthwith proceed to sell the rights of the plaintiff in the land and in the oil strata and give immediate possession thereof to the purchaser. Such being the reasonable construction of the statute, it is to be presumed that it was intended to have that effect by the legislature. In *Bakersfield etc. Co.* v. *Kern Co.*, 144 Cal. 154, [77 Pac. 892], it was held that taxes on a mining claim were collectible immediately, under these sections. There is a statement in the opinion in that case that payment of taxes could not be enforced by a sale of the mining claim. But in the view of the facts there involved and stated, this evidently means no more than that such sale could not be made, as there threatened, that is, without previous search for personal property and a seizure and sale thereof if found.

It may be urged that the second clause of section 3617, above quoted, refers only to mines, minerals, quarries, and timber "growing or being on lands of the United States," and to rights and privileges in such lands only, and has no application at all to lands held in private ownership. We can perceive no necessity for so narrow a construction. It is a matter of common knowledge, and a thing recognized by legislative enactments, that such mining rights and privileges may exist on lands belonging to the state of California. (Stats. 1897, p. 438, sec. 3; Stats. 1880, p. 130; Stats. 1873-4, p. 766.) The lands of the state are not taxable. If the rights and privileges of the miner upon such lands are not taxable to the person in possession, they would entirely escape taxation. There is no

doubt that the section does include such private possessory interests and rights in lands of the United States and authorizes the assessment thereof as private property, but it may also be reasonably held to include mines, minerals, and quarries in and under state lands and lands held in private ownership, and rights and privileges appertaining thereto, and to authorize the separate assessment of such property, when held separately from the ownership of the other parts of the land; the first part of the clause referring to absolute titles to such minerals, and the latter part to mining rights and privileges. such as those of the plaintiff in this case. In view of the manifest propriety and justice of such separate assessments, the broader construction should be adopted.

The court below erred in holding that the mining rights and privileges of the plaintiff under the lease could not be lawfully taxed to plaintiff, separately from the interest or estate assessed to the landowners. Upon the findings made, judgment should have been given for the defendant.

The judgment is reversed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., Melvin, J., and Beatty, C. J., concurred.