[Civ. No. 7285. Second Appellate District, Division Two.—February 21, 1933.]

THE TEXAS COMPANY (a Corporation), Appellant, v. MARIUS MOYNIER et al., Respondents.

Charles C. Stanley and J. A. Tucker for Appellant.

J. Wiseman MacDonald for Respondents.

WORKS, P. J.—Respondents are the lessors and appellant is successor to the lessee, a natural person, under a lease of oil lands, the instrument containing the usual provisions for the exploration and exploitation of the demised premises with a view to the taking of oil and natural gas therefrom. Plaintiff paid certain taxes under assessments made against it, pursuant to conditions hereafter to be stated, and thereafter commenced this action against defendants. The purpose of the action is to recover a one-sixth

part of the amounts so paid. Judgment went for defendants and plaintiff appeals.

 The assessment upon which the taxes were based was made against the "mining rights" in the land described in the lease. That it was proper under the law, as between appellant and the assessing authorities, so to make the assessment and to make it against appellant, is settled by several thoroughly considered cases. One of these is *Graciosa Oil Co.* v. *County of Santa Barbara,* 155 Cal. 140 [99 Pac. 483, 484, 20 L. R. A. (N. S.) 211]. There the assessment against the lessee was upon "mining rights and privileges". Another of the cases is *Mohawk Oil Co.* v. *Hopkins,* 196 Cal. 148 [236 Pac. 133]. In that instance the assessment ran against the "possessory rights and oil and gas leases in and upon" the lands demised. This latter decision was in effect approved in the somewhat peculiar and unusual case of *County of Ventura* v. *Barry,* 207 Cal. 189 [277 Pac. 333], in which certain assessments, according to the text of the court's opinion, ran against the "possession of, claim to or right to the possession of land, together with chattels real and leasehold interests in and to real property, together with all rights and privileges appertaining thereto and improvements thereon". See, also, as bearing upon the general subject, *Merchants Trust Co.* v. *Hopkins,* 103 Cal. App. 473 [284 Pac. 1072].

The above is but a preface or introduction to the matters involved in the present action. Here we are not concerned with a question between the public authorities and one against whom they have levied an assessment and from whom they have collected the resulting tax. The point in this action is presented by the query: As between lessor and lessee, who was to be the ultimate payer of the tax, either in whole or in part, under the terms of the lease, if that instrument contains provisions affecting the subject? After the premise laid above we are now at the threshold of this question. The lease contains the following paragraphs:

"Said Lessee covenants and agrees to pay as rent and royalty to said Lessors for the tenancy, occupancy and privileges granted under this lease one-sixth (1/6) part of the gross production of all petroleum, oil or natural gas produced and saved from said land by said Lessee (less deduc-

tions hereinafter stated) free from all costs, liens and charges of every kind and nature.

"The Lessee shall pay all taxes that may be levied against his improvements, plants, machinery and personal property, and also five-sixths (5/6) of all land taxes hereinafter assessed against said property during the existence of this lease, including oil and minerals that may be stored on said lands by him before the same become delinquent. Lessors agree to promptly transmit all tax bills to Lessee upon receipt thereof."

The phrase "all land taxes . . . against said property", employed in the second of these paragraphs, means "all taxes upon the land". So much, indeed, is conceded in the briefs. Respondents contend that by the use of the phrase the parties intended only what respondents term "the ordinary taxes upon the land", that is, the taxes which would have been levied against the land if it had no subsurface mineral value, thus attempting to approximate the situation, so far as the taxes are concerned, to that considered in *Graciosa Oil Co.* v. *County of Santa Barbara, supra,* when in that case the Supreme Court refers to "an ordinary lease for years giving the right to hold the land for usufructuary purposes only" and distinguishes between leases of that nature and those of the very kind in question here. Appellant's insistence is that the term "land taxes . . . against said property", as employed in the lease, means taxes upon the property considered in both its surface and subterranean aspects, and, especially, such taxes as appellant has been forced to pay; that is, taxes assessed against the "mining rights" in the property.

These contentions require, as a first aid to the construction of the lease, a consideration of the question, What is land? "Land always has a *situs*. The ownership of land consists in the right to use it for all lawful purposes, and that right of use constitutes its whole value. If the owner of land grants to another the right of way over it, or the right to lay and maintain pipes through it, the totality of ownership is divided into two separate interests: The original owner retains the right to use the land for every lawful purpose not inconsistent with the exercise of the privilege granted, and his grantee acquires the right to use it for the special purpose named in the grant. It is easy to suppose a case in

which the value of the granted privilege or easement exceeds the value of the interest remaining in the grantor—indeed, such instances are of frequent occurrence; but whether of greater or less value, it is still an interest in that particular piece of land, and no more of an ideal abstraction than the remaining right of the owner to cultivate the soil. The aggregate value of the two rights constitutes the aggregate value of the land, and each is assessable where the land is situated" (*Stockton Gas etc. Co.* v. *San Joaquin County,* 148 Cal. 313, 323 [83 Pac. 54, 58, 7 Ann. Cas. 511, 5 L. R. A. (N. S.) 174]).

Innumerable cases could be cited which contain statements of this broad and general character, but references to them are unnecessary, as *Graciosa Oil Co.* v. *County of Santa Barbara, supra,* touches the very situation presented here. In that case the Supreme Court in effect characterized "mining rights and privileges" thus: "The right vested in plaintiff is an estate for years, so far as necessary for the purpose of taking oil therefrom, and it carries with it the right to extract the oil and remove it from the premises. This right constitutes, for the term prescribed, a servitude on the land and a chattel real at common law." On the page preceding that which contains this language the court had already said, in speaking of the ordinary surface lease, if for convenience we may so term it, "that, in the absence of contrary statutory provisions, there is to be but one assessment of the entire estate in the land, and that this assessment should include the value of both the estate for years and of the remainder or reversion". The principal point decided in the case was that in the instance of an oil lease there were two assessments allowable, one against the lessor and one against the lessee, but there is nothing in the opinion to indicate, despite this proper divisibility of the assessment, that in the case of an oil lease there is not still an "entire estate" composed of the sum of the estate for years and the remainder or reversion. On the contrary, the opinion is affirmatively redolent of the idea that in such a case there is such an entire estate, so composed. This is made apparent in several passages, in addition to that already noted. For instance, it is said of the lessee under an oil lease: "His right extends to the extraction of a certain part of the substance of the land itself, to its permanent separation and

removal and its conversion to his own use. The whole object of the contract is to effect, if not technically a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another.'' Immediately following this passage occurs even more apposite language: ''It can be easily seen that the reasons for the rule applicable to ordinary leases for the use only, that the entire estate should be assessed to the lessor, are entirely lacking here, and that it would be a more just and reasonable adjustment of the burden of taxation of such oil leases to assess each party separately with the value of his right or estate in the land.'' The court says, again: ''The strata of oil, or oil-bearing sand, constitute, as we have seen, a part of the land which may be the subject of separate ownership. There may be a separate 'claim to' this part of the land, as well as a separate 'claim to' a portion of the surface. A 'claim to' take this stratum from its place and then convert it to one's own use may well be termed a claim to land although not accompanied by actual physical possession of the subterranean deposit.'' And, finally, observe this expression of the court: ''The oil strata also constitute 'minerals in and under the land', and the rights and privileges of plaintiff under the lease are clearly 'rights and privileges appertaining' to such minerals, and, consequently, are real estate within the meaning of the second subdivision'' of section 3617 of the Political Code, defining the term ''real estate''.

There is a passage in the opinion of the Supreme Court in *Mohawk Oil Co.* v. *Hopkins, supra,* which at first glance may seem at variance with the numerous quotations contained in the paragraph immediately preceding this, but it is not so. It was said concerning *Graciosa Oil Co.* v. *County of Santa Barbara, supra,* in the opinion, with our italics: ''The court held that the possessory right to lands for a term of years, embracing the privilege to bore for and extract oil therefrom, differed materially from ordinary leases for usufructuary purposes and that the right vested in a lessee in lands for the purpose of taking oil therefrom during a prescribed term was in the nature of a servitude on the land and a chattel real at common law, and as such *was separately assessable from the land itself* . . . '' Upon a little consideration it is evident that the italicized words of this pas-

sage were employed by the court through inadvertence. First, the court had just referred correctly to the earlier case in the phrase concerning "a servitude on the land and a chattel real at common law". Further, it is plain that what the court had really decided in the Graciosa case is that rights under an oil lease are separately assessable *although a part* of the land. We make mention of this circumstance because respondents appear to place their principal reliance upon *Mohawk Oil Co.* v. *Hopkins, supra.* Really, that case and the earlier one are in entire harmony.

We are bound to conclude that the assessment upon which appellant paid the taxes, one-sixth of which it seeks to recover from respondents, was an assessment for "land taxes . . . against said property", as that term is employed in the second of the two paragraphs quoted above from the lease, for the very plain reason that the "mining rights" are a part of the land.

 There is ample evidence, also, in the language of the two paragraphs of the lease that the parties to the instrument intended that the lessee should pay five-sixths and the lessors one-sixth of the taxes mentioned in the complaint in the action. Under the first of the two paragraphs respondents were to receive one-sixth of the gross production of oil or natural gas from the demised premises, leaving five-sixths thereof to appellant, the successor to the original lessee. This scheme for the division of production is basic to the arrangement made in the second paragraph for the apportionment of the liability of the respective parties to pay taxes, irrespective of the question as to who should be assessed for the "mining rights" by the taxing authorities under the law as first declared in the Graciosa case. According to the second paragraph appellant is bound to pay five-sixths "of all land taxes"—and we have already ascertained the import of this expression under the law—assessed against the demised property, "including oil and minerals that may be stored on said lands" by it. Here the draughtsman of the lease was a bit inartistic in his work, for, technically, a "land tax" could not "include" oil and minerals stored on the surface of the property, for those products become personal property immediately upon their abstraction from the subterranean areas of the land. This fact does not interfere, however, with the inevitable conclu-

sion that the clause imports that appellant was to pay but five-sixths of the taxes upon abstracted and stored production, as well as upon "land". This provision is in complete harmony with the scheme for the division of gross production, five-sixths to appellant, one-sixth to respondents. But the idea, that appellant was to pay the total taxes upon the "mining rights"—a term which represents the privilege of taking from the ground the valuable content yet unabstracted and unstored upon the surface of the ground—is altogether out of harmony with the arrangement for the division of production. Moreover—and this is especially to be noted, as it is a cardinal factor in the construction of the second paragraph above quoted — if the contention of respondents were to be adopted the tax arrangement, first, as to "mining rights", and, second, as to product stored on the surface of the ground, would be utterly inharmonious between themselves. Taking the total language of the two paragraphs, how can it be conceived that the parties intended that appellant should pay but five-sixths of the taxes on captured and stored product, after having successfully rescued it from the soil, while it should pay the totality of taxes upon the right which was representative of the uncaptured product yet remaining in the. soil, that uncertain product yet to be secured and stored wholly at the risk and expense of appellant? It is evident to us that the lease intends a straight arrangement throughout for a five-sixths to one-sixth apportionment of gross production and the same fractional apportionment of "all land taxes", no matter to which of the parties the taxes are assessed.

Although we have now arrived practically at a determination of the appeal, the case may be further clarified by giving consideration to a few special points presented by respondents. It will be observed that it is provided in the first paragraph quoted from the lease that respondents' one-sixth share of the gross production is to be paid "free from all costs, liens and charges of every kind and nature". Respondents contend that this language imports that the share shall be paid "without any deduction for taxes". This position is untenable for several reasons. In the first place, the omission of the word "taxes" from the clause, probably one of the principal items of expenditure in connection with the joint venture, is alone sufficient to show that the argu-

ment is unjustified, when it is considered that the subject of taxes is so clearly treated in the second paragraph. Then the clause as to costs, liens, etc., is general, while the provision as to taxes is specific. If there were a conflict between the two the latter, under a well-known rule of law, would control. The view of respondents is unsound also for the reason that they admit, as they must, that they are bound to pay one-sixth of the "ordinary taxes", what we may perhaps call the surface taxes, on the land. This circumstance alone condemns the attitude that the one-sixth share of production is to be paid "without any deduction for taxes".

It is claimed by respondents that the lease does not provide that respondents shall pay "one-sixth of the taxes". It does not, in terms, for there was no necessity for such a provision. If appellant is to pay but five-sixths of "all land taxes . . . against the property", who under the law is liable for the payment of the remainder if not respondents, the owners of the fee? Beyond the shadow of doubt, if respondents should fail to pay in any year a one-sixth part of the land taxes on the property, whatever for the moment that expression may mean, appellant, having paid the whole tax for the protection of its investment under the lease, could recover the one-sixth part from respondents, as it is endeavoring to do in this action. This is a proposition of law too well settled to require the citation of authority.

The trial court made certain findings of fact which are inconsistent with the conclusions reached in this opinion, and it erred in doing so. It is unnecessary to state specifically what those findings were.

No question is made as to the amount which is due appellant in case it is entitled to recover in the action, and for that reason it is proper, in ordering a reversal, to direct that judgment be rendered in appellant's favor.

Judgment reversed, with directions to the trial court to render judgment as prayed for in the complaint.

Craig, J., and Stephens, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 22, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 21, 1933.