[Civ. No. 10091. Second Appellate District, Division One.—March 4, 1936.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[Civ. No. 10092. Second Appellate District, Division One.—March 4, 1936.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Holbrook, Taylor, Tarr & Horton and W. Sumner Holbrook, Jr., for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader and Robert F. Shippee, Assistant City Attorneys, and Clyde M. Leach, Deputy City Attorney, for Respondent.

ROTH, J., *pro tem.*—The above-entitled cases were separately tried in the court below. Separate appeals have been taken from the judgment in each case. Since the primary question involved on both appeals is the same, the appeals are by stipulation argued in a single set of briefs and will be disposed of in a single opinion.

On April 30, 1921, and May 4, 1923, appellant, Hammond Lumber Company, pursuant to four several written harbor board orders, obtained from the, City of Los Angeles, respondent herein, acting in its proprietary capacity, the use of certain parcels of tide lands. These orders, it has been decided, were leases in legal effect. (*Hammond Lumber Co.* v. *County of Los Angeles*, 104 Cal. App. 235, 240 [285 Pac. 896]; *San Pedro etc. R. R. Co.* v. *City of Los Angeles*, 180 Cal. 18, 19 [179 Pac. 393].) The leases were silent as to which party should pay the taxes. Appellant paid taxes under protest on the parcels in question; and these actions are brought against respondent to recover the money so paid. Judgment in each was in favor of respondent.

It is admitted that when a lease is executed between private parties and it is silent as to which party shall pay taxes, the obligation to pay the taxes rests upon the landlord. (*Pacific Palisades Assn.* v. *Menninger,* 219 Cal. 257, 265 [26 Pac. (2d) 303].) ⬛ Appellant's theory is that since the city in this case acted in its proprietary capacity, its status is the same as a private party; that "there is not one law for the sovereign and another for the subject", and that the city is, therefore, in its capacity of landlord, under obligation to pay the taxes. (*Chapman* v. *State,* 104 Cal. 690, 694 [38 Pac. 457, 43 Am. St. Rep. 158].) Respondent concedes that it acted in a private capacity, concedes the general rule urged by appellant, but contends that there is an exception to the same, and "that when there is a lease of land owned by a municipality, the reversion being exempt from taxation, in the absence of agreement to the contrary, the duty to pay taxes on the usufructuary interest acquired by such private individual or corporation is upon the lessee, and not upon the municipal lessor". The claims of appellant in both actions aggregate the sum of approximately $80,000. The court found as a fact in both actions "that . . . no taxes were levied or assessed against the real property as owned by the defendant . . . and that the taxes which were levied and assessed and referred to in plaintiff's complaint . . . were levied and assessed against the *possessory interests* of the plaintiff, . . . " (Italics ours.)

⬛ There is no doubt that a possessory interest such as a lease is personal property, and may be severally assessed from the freehold. In *Graciosa Oil Co.* v. *Santa Barbara County,* 155 Cal. 140, a case in which an oil lease was separately assessed, the court said (at pp. 143 et seq. [99 Pac. 483, 20 L. R. A. (N. S.) 211]):

"It is no doubt the general rule, regarding land held under an ordinary lease for years giving the right to hold the land for usufructuary purposes only, that, in the absence of contrary statutory provisions, there is to be but one assessment of the entire estate in the land, and that this assessment should include the value of both the estate for years and of the remainder or reversion. (27 Am. & Eng. Ency. of Law, p. 678; *Chicago & A. R. Co.* v. *People,* 153 Ill. 409 [38 N. E. 1075, 29 L. R. A. 69]; *State* v. *Mississippi B. Co.,* 109 Mo. 253 [19 S. W. 421].) Section 3887 of the Political Code recognized

this rule and provided that 'the mortgagor or lessor of real estate is liable for the taxes thereon'. This section was repealed in 1880, but, so far as we are advised, the practice of making but one assessment of such land and covering therein the entire value of all interests and estates, has been uniformly followed in this state, since its repeal as well as before.

. . . . . . . . . . . . . .

"It can easily be seen that the reasons for the rule applicable to ordinary leases for the use only, that the entire estate should be assessed to the lessor, are entirely lacking here, and that it would be a more just and reasonable adjustment of the burden of taxation of such oil leases to assess each party separately with the value of his right or estate in the land. There is no statute forbidding it. On the contrary, we think the statute at least permits it, if it does not require it. If it is permitted, the respondent cannot complain. The suit is based on the provisions of section 3804 of the Political Code which give a right of recovery only when the assessment is absolutely void. Mere irregularities in procedure which do not invalidate the assessment do not absolve the taxpayer from his obligation to pay the taxes nor give him any right to recover taxes already paid." (See, also, *San Pedro etc. R. R. Co.* v. *City of Los Angeles,* 180 Cal. 18, 23 [179 Pac. 393].)

In the case at bar it is admitted that the land comprised in the leases while held by the city for its own use was not taxable. It is admitted that the reversion is not taxable. It is found as a fact that the only property assessed was the "possessory interest" of the lessee. The leases have many more years to run. The practical effect of appellant's contention is that it is entitled to the use of the land for the payment of taxes—indeed, that it may be entitled to a refund year after year for the payment of taxes on land which is tax-free if used by the city, if such taxes should run more than the rental agreed upon. It is true that the governmental capacity of respondent cannot be considered when it acts as a private party, but this does not mean that a municipality must, when acting in a private capacity, take affirmative action to advise another person, artificial or natural, that such person does not have the benefit of law enacted wholly for the benefit of government agencies. There is a significant practical difference between the obligation of a city owning land and the obligation of a private party owning land. In the

former case no taxes are paid so long as the land is used by the city. In the latter, the owner is responsible for taxes whether the land is used by himself or another.

We feel that the case of *Hammond Lumber Co.* v. *County of Los Angeles,* 104 Cal. App. 235 [285 Pac. 896], is decisive of the primary question here involved. We are mindful that in that case the court was not concerned with who was responsible for the taxes as between the lessor and the lessee. The primary question involved in that case was the validity of any tax, and, if valid, whether the assessor's valuation was the correct one. In that case, however, the court said, at pages 239 and 240:

"A leasehold interest is in this state assessable as personal property under section 3820 of the Political Code. (*San Pedro etc. R. R. Co.* v. *County of Los Angeles,* 180 Cal. 18 [179 Pac. 393].) When land held in private ownership is leased, both the leasehold and the reversionary interest are ordinarily assessed together to the owner, the value of the lessee's estate being treated as a constituent of the valuation of the larger interest belonging to the owner of the freehold. Instead of splitting the interests, it operates fairly as a rule to make a single assessment against the lessor as the beneficial owner not only of the freehold, but also of all lesser estates, and the incidence of the tax then becomes a matter of agreement between the lessor and the lessee. Usually in the case of short leases the lessor pays the entire tax, and with such charge in view he fixes his rent accordingly. (*Graciosa Oil Co.* v. *County of Santa Barbara,* 155 Cal. 140, 143, 144 [20 L. R. A. (N. S.) 211, 99 Pac. 483].) When, however, there is a lease of land owned by the state or a municipality, the reversion being exempt from taxation, *the usufructuary interest alone is subject to tax in proportion to its value; and in the absence of agreement to the contrary, the tax necessarily falls upon the lessee.* While the instrument executed between the plaintiff and the city of Los Angeles is denominated a 'permit', it is not, as plaintiff asserts, a mere license. It grants to plaintiff for a fixed period the right to the exclusive use of the premises on prescribed terms. It embodies an agreement having all of the characteristics and qualities of a lease, and entitles plaintiff to the exclusive control and enjoyment of the premises for the full term specified, subject only to fulfillment of the terms and conditions expressed. On the ter-

mination of the tenancy improvements constructed by the occupant are to become the property of the city, but so long as plaintiff complies with its covenants, plaintiff remains secure in its possession throughout the agreed term.'' (Italics ours.)

It is conceded that appellant cites respectable authority for its contention. (*Boston Molasses Co.* v. *Commonwealth*, 193 Mass. 387 [79 N. E. 827]; *People* v. *Barker et al.*, 153 N. Y. 98 [47 N. E. 46]; *Purcell* v. *City of Lexington*, 186 Ky. 381 [216 S. W. 599].) Such authority is undoubtedly persuasive, but it is not controlling upon this court, and has not yet been adopted as the law in this state. Further, the terms of the leases in those cases indicate an intention *not to hold* the lessee for taxes.

Therefore the judgment is affirmed in each case.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 30, 1936.