[L. A. No. 1288.    Department One.—July 18, 1904.]

## BAKERSFIELD AND FRESNO OIL COMPANY, Appellant, v. KERN COUNTY, and J. M. JAMESON, Assessor, Respondents.

TAXATION—POSSESSORY RIGHT TO MINING CLAIM—DUTY OF IMMEDIATE PAYMENT.—The possessory right to a mining claim is properly assessed as real estate under section 3617 of the Political Code; and under section 3634 of that code such assessment is immediately due and payable to the assessor, and it is the duty of the possessor to pay the same upon demand of the assessor.

ID.—PAYMENT UNDER PROTEST—THREAT OF SALE—ACTION TO RECOVER TAXES PAID.—The fact that such taxes were paid under protest, and under a threat of the assessor to sell the possessory right in the land, which he had no right to do, cannot alter the immediate duty of the possessor to pay the tax, and cannot sustain an action by him to recover back the taxes which were properly paid to the assessor.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, and F. E. Cook, for Appellant.

J. W. Ahern, for Respondents.

VAN DYKE, J.—The court below sustained a demurrer to the complaint in said action, and the plaintiff declining to amend, judgment was entered in favor of the defendants for their costs; from which judgment the plaintiff appeals.

It is alleged in the complaint that "about the month of June, 1899, plaintiff herein became entitled to the use, possession, occupation, and control of certain placer mining claims located and occupied under the laws of the United States, which said tracts or parcels of land were then and are now situated in the said county of Kern, state of California, and are particularly described as follows, to wit:—

"Tract No. 1—The southeast quarter of section twenty-eight (28) township twenty-eight (28) south, range twenty-eight (28) east, Mount Diablo base and meridian.

"Tract No. 2—The northeast quarter of the northeast quarter; the west half of the southeast quarter of the northeast quarter; and the west half of the northeast quarter of the southeast quarter of section four (4) township twenty-nine (29) south, range twenty-eight (28) east, Mount Diablo base and meridian."

That said lands during the month of June, 1899, and prior thereto, have been duly located as placer mining claims under the laws of the United States by citizens of the United States authorized to make such locations, and they had located the same in compliance with the laws of the United States and gone into possession thereof, and were engaged in the exploration and development of the mining claims and mining grounds duly located, and said locators during said month of June conveyed and transferred all of said lands to the plaintiff, and plaintiff thereupon entered into possession and occupation thereof, and has ever since, subject to the leases hereinafter mentioned, held, occupied, and possessed the same as mining claims and ground duly located and held as placer mining claims under the laws of the United States. The complaint then proceeds to state that the plaintiff and its grantors entered into certain writings and contracts whereby the said mining claims were leased to certain persons and corpora-

tions for the purpose of prospecting, developing, and working the same for the period of ten years, with the privilege of like contracts and privileges for ten years thereafter, and that said lessees have entered into possession of said lands, and have sunk oil-wells thereon, and are now extracting petroleum oil therefrom, and in accordance with said contract of lease are retaining six sevenths thereof and paying over to the plaintiff one seventh thereof. That plaintiff is informed and believes that during the life of said contracts of lease the said persons and corporations holding the same and operating thereunder will be able to extract and remove all the petroleum and other mineral substances of value from said lands, and that the interest of the said persons holding said contracts and in possession of said land and minerals represents and amounts to at least three fourths of the actual cash value of said lands and substances. That the only title or interest of plaintiff in and to said lands, or any part thereof, consisted of its title and interest therein as successor of the mineral locators thereof under the laws of the United States, and that the same has been held by plaintiff as placer mining claims located, occupied, and possessed under the mining laws of the United States, and the title to all of said lands now is and remains in the government of the United States, subject only to the rights of the plaintiff as successor of the mining locators thereof.

That prior to the assessment of said lands by the defendant herein, J. M. Jameson, as hereinafter stated, said Jameson demanded of plaintiff the statements of its property situated in said Kern County, and notified plaintiff that he intended to assess said lands and property above described, and all thereof, to plaintiff herein. That plaintiff thereupon, and upon receiving such demand, made out, verified, and presented, as required by law, a statement describing all of said real property above described and showing that the same was held, leased, and occupied under such contracts in the manner and form and upon the conditions hereinbefore set out. That notwithstanding the notice and demand of the plaintiff "not to assess said lands, and that the same were not assessable to plaintiff in any way, but belonged to the government of the United States . . . the said defendant Jameson, as such assessor, proceeded to and did assess said land, and all and

every part thereof, as property of and belonging to plaintiff herein, and did make an assessment thereof and place a valuation thereon as follows, to wit:—

" Tract No. 1—A valuation of........$28,000.00
" Tract No. 2—A valuation of........ 52,000.00."

And it is further stated that said assessor assessed said lands and plaintiff's interest therein as personal property under the laws of the state of California relative to the assessment of personal property, and gave notice to the plaintiff that it immediately pay said assessment as so levied and estimated upon the valuation aforesaid, at the rate for state and county purposes for the preceding fiscal year, to wit: the sum of $1,360, and notified the plaintiff if it failed to pay said taxes he would proceed to advertise and sell the property so assessed, notwithstanding the notice of protest of the plaintiff that said assessment was void and illegal, and that said property was not assessable at all or assessable as personal property. That the plaintiff made out in writing and caused to be served upon said assessor copies thereof, notifying him that such assessment, levied as aforesaid, was invalid and illegal for the reasons stated—copies of which notice so served upon the defendant assessor are annexed to the complaint. That after said notice and demands were so served upon the defendant assessor, and after his refusal to desist from said sale, and plaintiff believing that "if said taxes were not then and there paid the said assessor would sell said property, and thereby the title and interest of plaintiff therein would be impaired and clouded and great and irreparable injury and damage would be done to plaintiff and its interest in and to said property and a cloud would be cast upon the title to same, . . . thereupon paid to said assessor the amount demanded by him upon said assessment, costs, penalties, and expenses in connection with said levy and proposed sale, aggregating the sum of $1,375.60," and upon information and belief it is alleged that defendant Jameson, as assessor of the county, "has paid the same over to said county, and to its officers by law authorized to accept and receive money turned over by such assessor, and said county now keeps, holds, and retains the same and refuses to return the same to plaintiff." That after said taxes were so paid under protest, on or about

July 23, 1901, plaintiff caused to made out its claim or bill against said Kern County, duly itemized, giving the names, date, and particulars of said claim for taxes, and filed the same with the clerk of the board of supervisors of said county, which said claim was thereafter, in August, 1901, presented to the said board of supervisors being in session at a regular meeting, and was considered by said board, and after such consideration on the sixth day of August, 1901, said board rejected said claim and refused to allow the same; wherefore plaintiff asks judgment against said defendants for the sum of $1,375.60, with interest and costs.

The appellant contends, first, that the plaintiff had no assessable interest in the land at the time the assessment was made; second, that if there was any assessable interest owned by plaintiff at the time in said land, the same was not subject to be assessed as personal property.

The decisions of this court from an early period are to the effect that the possessory right to a mining claim is property, and as such may be sold, transferred, or levied upon, and is subject to taxes like other property.

In *Merced Mining Company* v. *Fremont,* 7 Cal. 317,[1] it was held that "the owner of a mining claim has, in *practical effect,* a good vested title to the property, and should be so treated, until his title is divested, by the exercise of the higher right of the superior proprietor. His rights and remedies, in the mean time, are not trammeled by the consideration that the higher right to reclaim the property exists in another, which right may *possibly,* but will not *probably,* be exercised. His right to protect the property for the time being, under the peculiar circumstances of the case, is as full and perfect as if he was the tenant of the superior proprietor, for years or for life."

In *People* v. *Moore,* 12 Cal. 56, it was held that the interest of the occupant of a mining claim was property liable to be subjected, at the will of the legislature, to such burdens as are imposed on other property. This was affirmed in *People* v. *Shearer,* 30 Cal. 645. In the latter case it is said: "These possessions, as before stated, are recognized and protected as property by the legislature in many instances, and by the courts and the people always. And this property is property

---

[1] 68 Am. Dec. 262.

in the citizen or inhabitant having possession, and not in the United States. This property, so recognized and protected, in our judgment is clearly not exempt from taxation under the clause in the act of Congress of September 9, 1850, exempting the public domain of the United States from taxation.'' The Political Code (sec. 3617), in defining the terms of property, says:—

''The term 'real estate' includes:—

''1. The possession of, claim to, ownership of, or right to the possession of land.

''2. All mines, minerals, and quarries in and under the land, all timber belonging to individuals or corporations, growing or being on the lands of the United States, and all rights and privileges appertaining thereto.'' .

The claim or interest of the plaintiff in the lands in question clearly falls within this definition of real estate, and is made subject to taxation.

In this case, by the statement of the complaint, the plaintiff claimed property in the land in question, and has leased the same, whereby it receives a revenue as the lessor, and if said tenants of the plaintiff under said lease should fail to comply with the terms thereof, or attempt to hold the land adversely to the plaintiff, the courts, upon application, would afford a remedy to the plaintiff, the same as to a landlord being the owner in fee.

The lien for taxes on the interest of the plaintiff in the land in question attached the first Monday of March preceding the assessment, and that lien, as against the interest of plaintiff in said land, could only be discharged by the payment of the taxes to be assessed. The assessment was made as of real estate. The complaint alleges that the defendant, Jameson, as such assessor, proceeded to and did assess said land, and all and every part thereof, as property of and belonging to plaintiff, and did make an assessment thereof and place a valuation thereon as follows, to wit: Tract No. 1, a valuation of $28,000; Tract No. 2, a valuation of $52,000. Tract No. 1, according to the complaint, is the southeast quarter of section 28, township 28 south, range 28 east, Mount Diablo base and meridian; and Tract No. 2 is described in the complaint as portions of section 4, township 29, of the same range.

This shows clearly that the assessment was made as of real

estate, and it was made in accordance with the statement furnished by the plaintiff corporation, on the demand of the assessor, in accordance with section 3634 of the Political Code, for the assessment of real estate. The statement in another part of the complaint that it was made as personal property seems to be a mere conclusion without any facts to sustain it, and cuts no figure. Appellant's attorney practically admits that it was assessed as real estate. He says: "It will be observed that no personal property whatever was assessed to the plaintiff in Kern County. It was assessed only with a claimed possessory interest in the lands described in the complaint. The assessment, as shown by the complaint, and in fact being an assessment of 'possessory interest in' and describing the lands; and it is not pretended that any personal property was assessed or sold, or attempted to be sold."

By section 3820 of the Political Code, "The taxes on all assessments of possession of, claim to, or right to the possession of land, shall be immediately due and payable upon assessment, and shall be collected by the assessor as provided in this chapter."

The assessment having been legally and properly made, as required by law, and the taxes being due and payable, the fact that the assessor threatened to proceed and sell plaintiff's interest in the land in question unless said taxes were immediately paid is quite immaterial. He was authorized to collect the tax, though not by sale of real estate. The property of the plaintiff in the land being subject to taxation, and the assessment having been properly made, it was the duty of the plaintiff to pay the taxes. In *Phelan* v. *San Francisco*, 121 Cal. 1, this court said: "If the tax was valid and constituted a lien upon plaintiff's property, his protest at the time of making the payment gives him no right of recovery. Neither the lien of the tax nor his obligation to pay it ceased by reason of any defect in the proceedings for a sale of the land to enforce its collection, and the satisfaction of this obligation, as well as the release of the lien, was a sufficient motive and consideration for the payment to take from it all character of duress. The plaintiff's obligation to pay the tax is not affected by the omission of the tax-collector to enforce its collection against other property."

From the facts stated in the complaint the plaintiff is not entitled to recover, and the demurrer was properly sustained. The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.