## BARNSDALL OIL CO. OF CALIFORNIA v. MERRIAM, Governor of California, et al.
### No. 3675K.

District Court, N. D. California, S. D.
Sept. 4, 1934.

Edward J. Vaughn, Thomas J. Casey, Arthur R. Smiley, Frederick D. Anderson, and Bertram L. Linz, all of Los Angeles, Cal., and F. Eldred Boland, of San Francisco, Cal., for plaintiff.

U. S. Webb, Atty. Gen., and H. H. Linney, Deputy Atty. Gen., for defendants.

Before WILBUR, Circuit Judge, and KERRIGAN and LOUDERBACK, District Judges.

KERRIGAN, District Judge.

This case comes before us upon motion to dismiss, motion to dissolve the temporary restraining order, motion for interlocutory injunction, and upon the merits. The answer was filed pursuant to the request of the court to permit the disposition of the entire case at one session of the three-judge court and was filed without waiver of any points of law raised in the motion to dismiss. Affidavits have been filed in behalf of each side.

Plaintiff is a foreign corporation, authorized to carry on an oil business in the state of California, and, in connection with its business, owns extensive oil leases in this state. It seeks an interlocutory and permanent injunction against the enforcement by the defendants, officers of the state of California, of the provisions of section 32 of the Bank and Corporation Franchise Tax Act (1929) Act 8488, Deering's General Laws of California, vol. 3, p. 4763, which section provides for the forfeiture of the right to do intrastate business in the event a foreign corporation fails to pay a delinquent franchise tax, and against the enforcement of the taxing provisions of said act by civil or criminal action. The provisions of the amendment of 1928 (adding section 16) to article 13 of the Constitution of California are also challenged. The taxing act in question was adopted in 1929 to carry into effect the constitutional amendment. The heart of plaintiff's objection to both the act and the constitutional amendment is that their challenged provisions and threatened enforcement by the franchise tax commissioners and other officers deprive plaintiff of the "equal protection of the laws" and take its property without "due process of law" in violation of section 1 of Amendment 14 to the Constitution of the United States. Other legal questions are raised, but they will be stated when discussed.

The tax in question was levied upon the exercise of the corporate franchise. The tax was computed on the basis of the net income of corporations at the rate of 4 per cent. thereof. From this basic rate deductions for local taxes paid on real and personal property were permitted. Ten per cent. of the real property tax and the entire personal property tax might be offset against the tax, provided the total offset did not exceed 75 per cent. of the total franchise tax. Article 13 of the Constitution of California, § 16, subd. 2 (a); Bank and Corporation Tax Act of 1929, §§ 4 and 26.

Plaintiff in its tax return for 1931, which was based on its income for the calendar year 1930, treated the local taxes it had paid on oil leases as personal property taxes and deducted the full permissible amount. This was in accord with the classification of the oil leases as personal property by the county assessor. Subsequently the franchise tax commissioner, after a hearing upon notice, computed plaintiff's tax liability for 1931 and assessed a deficiency of $49,031. This deficiency was assessed on the basis of a reclassification of the oil leases as real property with the permissible deduction accordingly reduced to 10 per cent. of the local taxes paid thereon. On appeal to the state board of equalization, the commissioner's action was affirmed. The deficiency has not been paid and the state authorities claim that under section 32 of said act the right of plaintiff to do intrastate business is subject to forfeiture.

The attack on the taxing act itself is founded on the premise that corporations with the same net income pay a variable tax depending on the proportion of real and personal property which is owned by the corporation and taxed locally. The same objection is made to the applicable provisions of article 13 of the California Constitution, which makes no provision for deduction of real property taxes. The question is: Does this variation deprive plaintiff of "the equal protection of the laws" or does it deprive it of its property without "due process of law" in violation of the Constitution of the United States? The validity of both the constitutional provision and the legislative act de-

pend upon the same principle and will be considered together.

The question of the validity of taxing measures adopted by the several states under the "equal protection of the laws" and "due process of law" clauses of the Fourteenth Amendment to the Constitution of the United States has given the courts great difficulty because it is practically impossible to draft a taxing statute so that it will impose an equal burden on all subject to the tax. The federal courts have refused to interfere with the taxing statutes of the states unless they were palpably discriminatory and in violation of the Constitution of the United States.

Relating to the issues here involved, article 13 of the Constitution of California provides in section 16, subd. 2 (a), as follows: "All financial, mercantile, manufacturing and business corporations doing business within the limits of this State, subject to be taxed pursuant to subdivision (d) of section 14 of this article, in lieu of the tax thereby provided for, shall annually pay to the State for the privilege of exercising their corporate franchises within this State a tax according to or measured by their net income. The amount of such State tax shall be equivalent to four per cent of their net income. Such tax shall be subject to offset, in a manner to be prescribed by law, in the amount of personal property taxes paid by such corporations to the State or political subdivisions thereof, but the offset shall not exceed ninety per cent of such State tax. In any event, each such corporation shall pay an annual minimum tax to the State, not subject to offset, of twenty-five dollars." And in subdivision 3 further provides: "The Legislature, two-thirds of all the members elected to each of the two Houses voting in favor thereof, may change by law the rates of tax, or the percentage, amount or nature of offset. * * * "

The provisions of the Bank and Corporation Franchise Tax Act of 1929 under attack have already been summarized. Specifically they are sections 4 and 26, and they modify the offset provisions of the quoted portions of the Constitution by providing for a deduction of 10 per cent. of the real property tax and limiting the total allowable offset to 75 per cent. of the franchise tax.

These constitutional provisions and legislative enactments were part of the taxing scheme designed to iron out the difficulties and inequalities in taxing national banks, state banks and banking institutions, and other corporations. The permissible methods of taxing national banks by the states are listed in Rev. St. § 5219, as amended, 12 USCA § 548; among other methods it is provided that they may be taxed locally for real estate and that they may be taxed according to their net income. No provision is made for taxing the personal property of national banks and it has been repeatedly held that their personal property is not subject to state taxation. (See note 43 to section 548 of 12 USCA.) California has equalized the taxation of national banks and state banks by providing the same method of taxing state banks as is permitted for national banks, namely, a tax measured by four per cent. of the net income in lieu of all other taxes except real property taxes. (See sections 1, 2, and 3 of the Bank and Corporation Franchise Tax Act of 1929.) As to the state banks this is called a franchise tax. The same franchise tax is imposed on business corporations, and the nonbanking corporations paying personal property taxes, were no offset provided, would be taxed more heavily than banks to the extent of the personal property tax paid. As to real property taxes, banks and other corporations are entitled to the 10 per cent. deduction. To equalize the inequalities of the tax burden as to personal property taxes on business corporations, the Legislature provided for the offset for personal property taxes previously described. See Report of the California Tax Research Bureau, p. 73 et seq. It is true that within a limited range the amount of taxes paid varies with the proportion of real and personal property holdings of the business corporations, but it is not such a variation as to violate the rights guaranteed by the Constitution of the United States. The purpose and general effect of the act is to equalize the tax burden. It is neither arbitrary nor discriminatory, and is within the realm of a taxing measure reasonably drawn to accomplish a proper purpose. We are not concerned by the fact that in 1933 a somewhat different method of equalizing the tax burden was adopted by the Legislature. The broad latitude accorded to states in the levy of taxes is well illustrated by the recent case of State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, and the collection of cases therein cited.

It is to be noted that the tax with its offsets falls equally upon all who are in the same circumstances. All corporations which have paid the same proportions and amounts of real and personal property are entitled to the same deductions from the franchise tax. In the case of La Belle Iron Works v. U. S.,

256 U. S. 377, 41 S. Ct. 528, 532, 65 L. Ed. 998, the Supreme Court of the United States sustained a federal taxing act on the theory that: "The act treats all corporations and partnerships alike, so far as they are similarly circumstanced." Without going into the question of whether Congress is bound by the same restrictions in its taxing measures as the states are by the "equal protections of the laws" clause of the Fourteenth Amendment, the quotation from the Supreme Court opinion is patently a statement of the test of whether or not a tax is discriminatory.

There is no merit in plaintiff's contention that a deduction may be made in computing net income, but not from the amount of the tax.

It is contended by plaintiff that the franchise tax commissioner was guilty of arbitrary action in reclassifying the taxes paid on plaintiff's leases as real property taxes. It is the fair effect of the decisions in California that oil and gas leases, mining and other leases are real estate and that the taxes paid on them are real property taxes. Section 3617 of the Political Code includes in its definition of real estate possession of land or possessory interest therein. It has been repeatedly held that mining and oil and gas leases are real estate. Bakersfield & Fresno Oil Co. v. Kern County, 144 Cal. 148, 77 P. 892; San Pedro, L. A. & S. L. R. Co. v. Los Angeles, 180 Cal. 18, 179 P. 393; Mohawk Oil Co. v. Hopkins, 196 Cal. 148, 236 P. 133; County of Ventura v. Barry, 207 Cal. 189, 277 P. 333; Texas Co. v. Moynier, 129 Cal. App. 738, 19 P.(2d) 280. Section 3820 of the Political Code provides for the collection of the taxes on leasehold interests in the same manner as personal property and this method of collection of such taxes on real estate has been sustained in Mohawk Oil Co. v. Hopkins, supra, and County of Ventura v. Barry, supra. The cases do not warrant the distinction claimed by plaintiff between real estate and real property. The franchise tax commissioner, therefore, properly reclassified these taxes as real property taxes in assessing the deficiency. He was not bound by the action of the county assessor in classifying these leases as personal property. The taxes being collectible in the same manner as personal property taxes, this classification was made doubtless for the purpose of administrative convenience. We find that the action of the franchise tax commissioner was fair and proper and violated no constitutional rights of plaintiff secured to him by Amendment 14 to the Constitution of the United States.

It is contended that this taxing act violates plaintiff's rights under certain provisions of the California Constitution. First, it is contended that it is not in accord with section 16, subds. 2 (a) and 3 of article 13, already quoted. We find the provisions in question clearly within the power granted the Legislature to change "the percentage, amount or nature of the offset." As to the second of these contentions, we find without discussion that said provisions do not violate article 1, § 11, of said Constitution, providing that "all laws of a general nature shall have a uniform operation," and article 4, § 25, subds. 10 and 20, which provide that Legislature shall not pass local or special laws for the assessment or collection of taxes, or in exempting property from taxation.

The contention that section 32 of the Bank and Corporation Franchise Tax Act does not provide for forfeiture of the right to do business in the state because of a failure to pay a deficiency is without merit. Although the language does not expressly refer to failure to pay a deficiency, it is obvious, and the fair intent of the language used, that the Legislature was providing a penalty for failure to pay the franchise tax or any part thereof, including a deficiency. We find that the eleven months' period fixed in said section began to run ten days from the date of notice and demand from the commissioner after the tax deficiency became final.

The question of the jurisdiction in equity of this court to entertain this suit has been raised on the theory that plaintiff has a plain, speedy, and adequate remedy at law. Since we are deciding against plaintiff on the merits, the jurisdictional question need not be discussed at length. Prior to May 1, 1933, section 30 of said taxing act provided for the payment of a tax, the validity of which was doubted, under protest and the maintenance of a suit against the state treasurer to recover the payment and test the validity of the tax. Assuming that this statute met the requirements of affording such a plain, speedy, and adequate remedy at law, enforceable in the federal courts, as to bar a resort to an equitable action to enjoin the taxing officers under the rule laid down in Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, the statute was so modified on May 1, 1933, as to deprive plaintiff of its rights thereunder. The amendment of 1933 (1933 Cal. St. p. 703) took away the right to pay under protest where an appeal had been taken to the state board of equalization. Plaintiff had previously appealed to that body. The going into effect of the amend-

ment cut off its right to pay under protest and sue to recover. The remedial right granted by the original section 30 was entirely statutory, and, when, what in effect amounted to its repeal became the law, the right to sue was no longer existent. Callet v. Alioto, 210 Cal. 65, 290 P. 438. The recent case of City Bank Farmers' Trust Co. v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 78 L. Ed. 628, upholds the jurisdiction of the federal courts to entertain suits against the taxing officers of a state to restrain their enforcement of the tax, as a means of testing the validity of the tax where there is no provision for paying the tax under protest. See Franklin v. Nevada-California Power Co. (C. C. A.) 264 F. 643.

It is ordered that the motions for temporary and permanent injunctions be denied; but in order to give plaintiff an opportunity to pay the tax and avoid the forfeiture, it is ordered that the temporary restraining order be continued in effect for ten days from date hereof.

Let a decree be entered in favor of defendants, with costs.

WILBUR, Circuit Judge, and LOUDERBACK, District Judge, concur.